

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-17-2007

# Samu Samu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2687

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Samu Samu v. Atty Gen USA" (2007). *2007 Decisions.* Paper 574.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/574

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 06-2687

ROBERT SAMU SAMU,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.


Petition for Review of an Order of the
Board of Immigration Appeals
U.S. Department of Justice
BIA File No. A96-259-960


Submitted Pursuant to Third Circuit LAR 34.1(a)
June 18, 2007

BEFORE McKEE, FISHER, and CHAGARES, Circuit Judges

(Opinion Filed: August 17, 2007)


———————————


OPINION

———————————


McKEE, Circuit Judge,

Robert Samu Samu petitions for review of a final Order of Removal by the Board of

Immigration Appeals, ("BIA"). Samu contends that the BIA erred in not granting him relief

under the United Nations Convention Against Torture ("CAT") or withholding of removal

1

pursuant to Immigration and Nationality Act ("INA") §241(b)(3)(A). For the reasons stated below, we will deny the petition for review.

## I. Facts & Procedure

Since we write for the benefit of the parties, we will forego a lengthy discussion of the facts and procedural history of this case. We will only briefly discuss the facts of the case as they are pertinent to the issues. Samu is a citizen of Indonesia and is of Chinese descent. Additionally, Samu is a practicing Christian. Samu was temporarily authorized to stay in the United States from November 9, 1998 until May 7, 1999. Samu stayed beyond that date and subsequently, removal proceedings proceeded against him on or about April 8, 2003.

Before the Immigration Judge ("IJ"), Samu requested withholding of removal and relief under CAT, or in the alternative, voluntary departure. Samu also requested asylum, but was statutorily ineligible for that relief because his application was time-barred. Samu presented testimony regarding several instances of violence and threats of violence against his family while in Indonesia. The first of these incidents occurred in 1986 when a group of native Indonesians beat his father, set fire to his home and family's store, and killed the family dog. The second major incident occurred in 1996, when Samu's little sister was kidnaped by a native Indonesian man. The third and final incident occurred while Samu was living in the United States in the summer of 1999. Riots broke out in his home of Ambon, which resulted in the death of Samu's grandmother and the amputation of his cousin's leg.[1] After hearing his testimony, the IJ denied relief, but allowed voluntary departure. The IJ determined that the discrimination and prior incidents of violence were inadequate to establish a clear probability

---

[1] Although Samu stated that the riot was the result of tension between Christians and Muslims, there is also evidence that the source of the riot was economic unrest.

that the he would be harmed if returned to Indonesia.  On appeal, the BIA summarily affirmed the decision of the IJ.

## II.  Jurisdiction & Standard of Review

We have jurisdiction to review a final order of removal of the BIA under 8 U.S.C. § 1252(a)(1). *See Abdulai v. Ashcroft*, 239 F.3d 542, 547 (3d Cir. 2001).  Where, as here, the BIA defers to the IJ's decision and does not render its own opinion, we review the decision of the IJ as the final agency order.  *Id.* at 549 n.2; *See also Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002).  We review the IJ's decision for substantial evidence; *see, e.g.*, *Lie v. Ashcroft*, 396 F.3d 530, 534 n.3 (3d Cir. 2005), we reverse only if, "the evidence is such that a reasonable factfinder would be compelled to conclude otherwise." *Chavarria v. Gonzales*, 446 F.3d 508, 515 (3d Cir. 2006); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

## III. Discussion

Samu argues that the IJ erred by denying him withholding of removal and relief under the CAT based upon his experiences in Indonesia and the hostile climate in the country towards Chinese Christians.  In order to gain withholding of removal under 8 U.S.C. § 1231(b)(3)(A),[2] Samu must prove that there is a "clear probability" that he will be persecuted if he is removed to Indonesia. *INS v. Stevic*, 467 U.S. 407, 424 (1984).  "The question under that standard is whether it is more likely than not that the alien would be subject to persecution." *Id.*  "Persecution" requires "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993).  Yet,

---

[2] 8 U.S.C. § 1231(b)(3)(A) states, "[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

3

persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.* The IJ concluded that Samu had failed to meet his burden for establishing eligibility for withholding of removal. Upon review, we can find no evidence compelling us to rule otherwise. Therefore, we will deny the petition.

Although the Court is sympathetic with the tribulations that Samu and his family have endured, we do not believe that the evidence presented proves past or future persecution. This Court has previously acknowledged in *Lie v. Ashcroft* that "[r]andom, isolated criminal acts perpetrated by anonymous thieves do not establish persecution." 396 F.3d at 536 (quoting *Gormley v. Ashcroft*, 364 F.3d 1172, 1177 (9th Cir. 2004)). Samu fails to show how the attacks on his family were motivated by religious or ethnic intolerance. He also has not established that the acts he relies upon for his claim were perpetrated by agents of the Indonesian Government or that the Government acquiesced in the acts he complains of. The only evidence offered was the ethnicity of the attackers and an ethnic slur during the earliest attack. Yet, Samu also acknowledged that the attack on his father was due in part to the family's success. Absent a nexus to Samu's religion or ethnicity, we are not compelled to view these actions as rising to the level of persecution, even if he had presented evidence of governmental acquiescence.

Samu's argument is further undercut by three other factors. First, Samu remained in Indonesia and attended a four-year college rather than leave the country. Second, when Samu finally did leave for the United States, he was motivated by economic hardship, not persecution. Finally, Samu still has family living in Indonesia without incident. As stated in *Lie*, "when family members remain in the petitioner's native country without meeting harm, and there is no individualized showing that the petitioner would be singled out for persecution, the

4

reasonableness of a petitioner's well-founded fear of future persecution is diminished." 396 F.3d at 537.

To reinforce his claim of future persecution, Samu relies on the persecution of Chinese Christians generally in Indonesia. In *Lie*, we addressed the issue of whether an alien can establish a well-founded fear of future persecution based on a pattern or practice of persecuting a specific group due to their ethnicity or religion. 396 F.3d at 537. We stated that the persecution had to be "systematic, pervasive, or organized." *Id.* (citing *Ngure v. Ashcroft*, 367 F.3d 975, 991 (8th Cir. 2004)). Furthermore, the pattern or practice has to be "committed by the Government or forces the Government is either 'unable or unwilling' to control." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003) (quoting *Gao,* 299 F.3d at 272). Samu points to the unwillingness of the police to help locate his kidnaped sister as evidence of government acquiescence. However, Samu admitted that his family waited three days before contacting the police and they had neither evidence, nor leads to pursue. This does not constitute acquiescence in the claimed persecution. The other incidents do not implicate the Government's acquiescence in any way.

Moreover, Samu's attempt to distinguish *Lie* is unconvincing. Samu highlights the number and seriousness of the acts against his family compared to a singular incident in *Lie*. Yet, the incident in *Lie* was quite serious in that it involved a burglary and stabbing of a woman.[3] Furthermore, the time frame involved in the attacks on Samu's family undermines his claim of persecution. The most serious of the incidents involving the beating of his father and burning of

---

[3] Additionally, Samu claims that, unlike the Petitioner in *Lie*, he came to the United States to escape further persecution. However, the petitioner in *Lie* filed a timely asylum application upon entering the country; Samu did not. *See Lie*, 396 F.3d at 533. Samu also has stated that he came to the United States in order to get a job to support his family rather than to escape persecution.

5

the family store and house, took place twenty-two years ago. As evidenced by the U.S. Department of State International Religious Freedom Report from 2003, the religious climate of Indonesia has undergone change since then with the support of the government.[4] The record does not contain sufficient proof of future persecution based on previous experiences, nor based on any pattern or practice of persecution towards Christian Chinese living in Indonesia. As a result, Samu's request for withholding of removal will be denied.

Samu also appeals the rejection of his CAT claim. For relief under the CAT, Samu must prove that it is "more likely than not that he...would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). The IJ found that Samu had failed to prove that it is more likely than not that he would be tortured if he is removed to Indonesia. We agree. There is no evidence to support that claim and it appears to have been raised in "boiler plate" fashion with no real basis in the record.

## IV. Conclusion

For the foregoing reasons, we will deny the petition for review.

---

[4] The International Religious Freedom Report presented as evidence states, "The Government made considerable progress in some area, such as reducing interreligious violence in the Maluku Islands and Central Sulawesi, and arresting and prosecuting terrorists and religious extremists for carrying out religiously motivated attacks." The Report also acknowledges that Catholicism and Protestantism are officially recognized by the Government. The Report also highlights how religious intolerance continues to exist in some parts of the country despite Government efforts. However, that suggests the Government is taking steps to address the situation. United States Department of State, *Indonesia: International Religious Freedom Report* (2003) (Appendix 258).

6