**Nereida SKENDAJ; Rafaelo Skendaj, Petitioners**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 06–5029.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 25, 2008.

Filed: April 22, 2008.

Charles Christophe, Esq., Christophe & Associates, P.C., Hebrew Immigrant Aid Society, Aleksander B. Milch, Esq., New York, NY, for Petitioners.

David E. Dauenheimer, Esq., Richard M. Evans, Esq., Virginia M. Lum, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: McKEE, RENDELL and TASHIMA *, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Nereida Skendaj, mother, and Rafaelo Skendaj, son, petition for review of a final order of the Board of Immigration Appeals ("BIA"), in which the BIA affirmed the denial by an Immigration Judge ("IJ") of their applications for asylum and withholding of removal. They also petition for review of the BIA's denial of relief under the Convention Against Torture ("CAT"). The petitioners are Albanian citizens who resided in Greece before arrival in the United States; Albania is the proposed country of removal. Ms. Skendaj claims that she and her son have a well-founded fear of future persecution on account of

* Honorable A. Wallace Tashima, Senior Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

the political opinion of her father, a high-ranking member of the Albanian Democratic Party. She testified that she left Albania for Greece because she received anonymous telephonic threats that she would be forced into prostitution because she was the daughter of an enemy of the Socialist Party. Despite the threatening calls, the petitioners traveled to Albania to visit Ms. Skendaj's father. During this visit, unidentified motorcyclists pulled up alongside a taxi carrying the petitioners. Ms. Skendaj claims that one of the motorcyclists said to the other, "grab the kid, the window[']s open." (A.R. 119.) She perceived this as a threat to kidnap her son. The taxi driver evaded the motorcyclists, and they escaped unharmed.

To be eligible for asylum, an applicant must demonstrate that she is a refugee. *See* 8 U.S.C. §§ 1158(b)(1)(A), 1101(a)(42)(A). A refugee is "a person unable or unwilling to return to the country of that person's nationality or habitual residence because of past persecution or because of a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion." *Gao v. Ashcroft,* 299 F.3d 266, 271–72 (3d Cir. 2002); *see* 8 U.S.C. § 1101(a)(42)(A). To warrant a finding of past persecution, the applicant must prove that: (1) the alleged persecution was sufficiently severe; (2) the alleged persecution was on account of a protected ground; and (3) the alleged persecution was perpetrated by the government or by forces the government was either unwilling or unable to control. *Abdulrahman v. Ashcroft,* 330 F.3d 587, 591 (3d Cir.2003). A rebuttable presumption of a well-founded fear of future persecution arises if an applicant establishes that she suffered past persecution. *See* 8 C.F.R. § 208.13(b)(1). Otherwise, an applicant must demonstrate that she has a subjectively genuine and an objectively reasonable fear that she will be persecuted if forced to return to the proposed country of removal. *Zubeda v. Ashcroft,* 333 F.3d 463, 469 (3d Cir.2003). A subjectively genuine fear is established through credible testimony, and an objectively reasonable fear is established if the applicant shows that she "would be individually singled out for persecution" or that there exists a " 'pattern or practice ... of persecution of a group of persons similarly situated to the applicant on account of [a protected ground]' ". *Lie v. Ashcroft,* 396 F.3d 530, 536 (3d Cir.2005) (*quoting* 8 C.F.R. 208.13(b)(2)(iii)(A)). To qualify as a "pattern or practice," the persecution must be "systemic, pervasive, or organized." *Id.* at 537 (internal quotation marks omitted).

We have jurisdiction to review the BIA's final order pursuant to 8 U.S.C. § 1252(a). Because this is not a situation in which the BIA " 'expressly adopted [a] portion of the IJ's opinion' or 'announced that it was deferring' to the IJ's findings," we review the BIA's decision. *Voci v. Gonzales,* 409 F.3d 607, 612 (3d Cir.2005) (*quoting Abdulai v. Ashcroft,* 239 F.3d 542, 548 n. 2 (3d Cir.2001)). Factual findings must be upheld if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (internal quotation marks omitted). In other words, "they must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft,* 242 F.3d 477, 483–84 (3d Cir.2001). Persecution is a finding of fact reviewed under this substantial evidence standard. *See id.*

■ The petitioners argue on appeal that the BIA's finding that the petitioners have not met their burden of establishing past persecution or a well-founded fear of future persecution on account of a protected ground was not supported by substantial evidence. We disagree. For purposes

of this appeal, we will assume Ms. Skendaj's credibility.

Substantial evidence supports the BIA's conclusion that the unfulfilled telephonic threats to Ms. Skendaj that she would be forced into prostitution because of her father's political affiliation were not severe enough to warrant a finding of persecution. We have indicated that " '[t]hreats standing alone ... constitute persecution in only a small category of cases.' " *Li v. Att'y Gen.*, 400 F.3d 157, 164 (3d Cir.2005) (alterations in original) (*quoting Lim v. INS*, 224 F.3d 929, 936 (9th Cir.2000)). Further, we have made clear that "unfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution." *Id.* at 164–65. Despite the threatening phone calls, Ms. Skendaj was able to graduate and marry without suffering harm before moving to Greece. Also, Ms. Skendaj's sister was able to attend school in Tirana, the Albanian capital, without harm. Further, Ms. Skendaj voluntarily returned with her son to Albania to visit. Thus, this does not fall within the small category of cases where threats standing alone constitute persecution because the threats were not highly imminent.

Substantial evidence also supports the BIA's conclusion that the motorcycle incident did not constitute past persecution because the petitioner failed to prove that it was perpetrated by the Albanian government or by forces the government was either unwilling or unable to control. First, Ms. Skendaj was unable to identify the motorcyclists' affiliation. Ms. Skendaj testified that the motorcyclists' faces were obscured by their helmets, and her husband, who was also in the taxi, testified that he could not discern whether the motorcyclists were wearing uniforms. Ms. Skendaj's testimony regarding the motorcyclists' commands, which she characterizes as a complete account of what she heard, did not reveal any verbal comments relating to either the petitioners', or Ms. Skendaj's father's, political opinions. Second, the petitioners failed to report the incident to the police, which makes it difficult for them to carry their burden in proving that the government was unable or unwilling to control the motorcyclists. Third, the petitioners did not experience further threats or confrontations after the incident, which lessens the probability that they were targeted by the Albanian government or the Socialist party and increases the probability that the motorcyclists were general criminals. Based on these factors, we conclude that substantial evidence supports the BIA's finding that the petitioners failed to establish that they suffered past persecution on account of political opinion or imputed political opinion.[1]

1. The petitioners also argue, alternatively, that they were persecuted on account of membership in a social group consisting of their family. We have adopted the BIA's definition of a social group as " 'a group of persons all of whom share a common, immutable characteristic.' " *Fatin v. INS*, 12 F.3d 1233, 1239–40 (3d Cir.1993) (*quoting In re Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)). To demonstrate persecution on account of membership in a social group, an alien must: (1) identify a social group within the above definition, (2) establish membership in that group, and (3) demonstrate a nexus between the membership in the social group and the persecution. *Id.* at 1240. Regarding the third prong, substantial evidence supports a finding that the petitioners failed to demonstrate a nexus between their family membership and the motorcycle incident for essentially the same reasons the petitioners failed to prove past persecution based on political opinion. Most notably, the petitioners failed to identify the motorcyclists' affiliations. Therefore, even assuming that a family constitutes a social group within the meaning of the statute, substantial evidence supports a finding that the petitioners were not persecuted on account of membership in a social group.

■ Because the petitioners failed to demonstrate past persecution, they cannot be afforded a rebuttable presumption of a well-founded fear of future persecution. The BIA's finding that the petitioners failed to otherwise demonstrate a well-founded fear of future persecution by failing to prove that such a fear was objectively reasonable was also supported by substantial evidence. After reviewing the record, we are not compelled to conclude that there is a pattern or practice in Albania of persecuting a protected group of which the petitioners are members. A United States Department of State country profile on Albania states that "neither the [Albanian] Government nor the major political parties engage in policies of abuse or coercion against their political opponents." (A.R. 553.) Specifically, the report states that "there are no indications that the Socialist Party, either through its own organization or through Government authorities, is engaged in a pattern of repression or violent behavior against its opponents." (A.R. 555.) In addition, substantial evidence supports a finding that the petitioners will not be singled out for persecution. Ms. Skendaj has married and moved away from her family, diminishing the risk that she or her son will be singled out for persecution based on the political opinion of her father. Further, Ms. Skendaj was not herself a member of the Democratic Party, she was rarely seen with her father at Democratic Party activities, and there were no subsequent threats made after the motorcycle incident. Thus, substantial evidence supports the finding that the petitioners failed to demonstrate an objectively reasonable, well-founded fear of future persecution.

The petitioners also argue that the BIA erred in finding that the petitioners did not meet their burden for establishing a claim for withholding of removal or relief under the CAT. Because "[a]n alien who fails to establish that he or she has a well-founded fear of persecution ... necessarily will fail to establish the right to withholding of removal," substantial evidence supports the denial of the petitioners' withholding of removal claim. *See Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004). Similarly, because "the standard for invocation of the CAT is more stringent than the standard for granting asylum"—regarding both the severity of the requisite harm and the level of government involvement—the BIA's finding that the petitioners failed to meet their burden to demonstrate entitlement to CAT relief is supported by substantial evidence as well. *Wang v. Ashcroft*, 368 F.3d 347, 349–50 (3d Cir.2004); *see* 8 C.F.R. § 208.18(a)(1).

For these reasons, we will **DENY** the petition for review of Nereida Skendaj and Rafaelo Skendaj.