**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2154
_____

INGRID CISNEROS MARTINEZ, J.D.C.M.,
                                                    Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES OF
AMERICA

_____

On Petition for Review of an Order of the Board of Immigration Appeals
(Agency Nos. A206-159-453; A206-159-455)
Immigration Judge:  Steve Mannion
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 16, 2025

(Filed: May 15, 2025)

Before:  Chagares, *Chief Judge*, Scirica, and Rendell, *Circuit Judges*.
_____

OPINION
_____

RENDELL, *Circuit Judge*.

Petitioner Ingrid Martinez Cisneros for review of a Board of Immigration

Appeals' (BIA) ruling dismissing her appeal from an Immigration Judge's (IJ) denial of

her asylum and withholding of removal claims.[1] We will deny the petition for review because we discern no error in the BIA's and IJ's conclusion that Cisneros failed to carry her burden of showing that her home country of Peru would be unable or unwilling to protect her from unidentified private actors were she to return.

I.

Cisneros is a native and citizen of Peru. Between 1998 and 2007, Cisneros was romantically involved with Juan Carlos Camones Huarcayo ("Juan Carlos") with whom she had two children, both now adults. According to Cisneros, Juan Carlos and his family were known criminals. Shortly after the birth of their daughter, Cisneros and Juan Carlos separated and she moved away. Later, however, Cisneros and her children moved into a building owned by Juan Carlos's family.

In 2012, Juan Carlos was killed by Peruvian police while he was engaged in an armed robbery. Cisneros testified that after Juan Carlos's death, her family was threatened multiple times by men riding motorcycles. Most notably, her family was held at gunpoint by unknown men who threatened to kidnap her daughter if Cisneros did not pay off a debt that Juan Carlos apparently owed to them. Cisneros reported the incident to the police, who proceeded to write a report despite Cisneros not knowing the motorcyclists' names and her inability to identify them beyond noting that they had Venezuelan accents. Cisneros claimed that the police requested payment for her personal

---

[1] Martinez's daughter, J.D.C.M., is a derivative applicant and brings no independent claims.

protection. She did not follow up on her report to the police nor has she encountered these motorcyclists again.

In October 2021, Cisneros and her children entered the United States without inspection. They were detained by U.S. Immigration and Customs Enforcement and charged with removability. She, along with her daughter, conceded removability but applied for asylum, withholding of removal, and Convention Against Torture (CAT) protection. The IJ denied Cisneros's application, finding that (1) she failed to demonstrate that she had been persecuted, (2) the purported particular social group on which she based her claim was not cognizable for asylum or withholding purposes, and (3) she failed to establish that the Peruvian government was unable or unwilling to control her purported persecutors. On appeal, the BIA agreed with the IJ's determination that her purported particular social group was not cognizable and found no clear error in the IJ's determination that Cisneros failed to establish that the Peruvian government was unable or unwilling to control her feared third-party persecutors.[2] The BIA did not reach the question of whether Cisneros was subject to actual past persecution. She then petitioned for review.

_____

[2] Cisneros did not challenge the IJ's denial of the CAT claim on appeal.

II.[3]

Cisneros challenges various aspects of the IJ and BIA's decisions. She claims that (1) the IJ erred in finding that she did not experience past persecution, (2) the IJ and BIA erred in concluding that the particular social group was not cognizable, and (3) the IJ and BIA erred in finding that she failed to meet her burden in establishing that the Peruvian government was unable and unwilling to protect her. Because the BIA's conclusion regarding whether Cisneros met her burden of establishing that the Peruvian government was unable and unwilling to protect her is dispositive, we need not reach the past persecution or particular social group aspects of her case.

Where the BIA issues a decision on the merits, we review the BIA's decision. *Li v. Att'y Gen. U.S.*, 400 F.3d 157, 162 (3d Cir. 2005). Where the BIA relies on and adopts the IJ's decision, we review both the BIA's and IJ's decisions. *He Hun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). Here, the BIA referenced and adopted all factual findings of the IJ, thus, we review both the BIA and IJ's decisions. The BIA's determinations must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir. 2008). We reverse only when "the evidence is such that a reasonable factfinder would be compelled to conclude otherwise." *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006). We review the BIA's legal conclusions *de novo*. *Toussaint v. Att'y Gen. U.S.*, 455 F.3d 409, 413 (3d Cir. 2006) (citation omitted).

_____

[3] We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1).

To qualify for asylum, an applicant must establish, among other things, either (1) "past persecution on account of a protected ground, which creates a rebuttable presumption of a well-founded fear of future persecution," or (2) "a well-founded fear of future persecution on account of a protected ground without regard to past persecution." *Hernandez Garmendia v. Att'y Gen. U.S.*, 28 F.4th 476, 482 (3d Cir. 2022) (citing 8 C.F.R. § 1208.13(b)). To obtain withholding of removal, the applicant must "establish[] a 'clear probability' of persecution upon removal." *Saban-Cach v. Att'y Gen. U.S.*, 58 F.4th 716, 724 (3d Cir. 2023). This requires consideration of whether the applicant has "show[n] that it is more likely than not that s/he would be persecuted if returned home." *Id.*

When the alleged persecutor is a private actor, even if the applicant can establish likely persecution, she must also show that the government is "unable or unwilling to control" the persecutor. *Doe v. Att'y Gen. U.S.*, 956 F.3d 135, 142 (3d Cir. 2020). "[T]he unable-or-unwilling-to-control test evaluates the government's ability and willingness to control private actors . . . with respect to the specific applicant seeking relief." *Galeas Figueroa v. Att'y Gen. U.S.*, 998 F.3d 77, 89 (3d Cir. 2021). Where an applicant's home government has not been provided with information to permit it to address the actions of private actors, its failure to investigate or intervene does not, standing alone, necessarily establish that it is "unable or unwilling" to control those private actors.[4]

---

[4] *See, e.g.*, *Doe v. Holder*, 736 F.3d 871, 878 (9th Cir. 2013) ("[U]nwillingness or inability to control persecutors is not demonstrated simply because the police ultimately were unable to solve a crime or arrest the perpetrators, where the asylum applicant failed

In this case, the BIA and IJ focused on several pieces of evidence demonstrating that Cisneros had not shown that the Peruvian government was unable or unwilling to protect her from future persecution. Among other things, the BIA and IJ noted that when Cisneros went to the police after the incident with the purportedly Venezuelan motorcyclists, the police accepted her complaint and wrote a report. And while the police did not apparently do anything else beyond take the report, the BIA observed that Cisneros was unable to provide the police with any identifying information that would aid in apprehending the motorcyclists. Indeed, she admitted she could not provide names or identifying characteristics because the individuals were wearing motorcycle helmets. While she reported the assailants had Venezuelan accents, this was not very helpful as she admitted that "[t]here's a lot of Venezuelans in Peru, there's a lot of them, and they're involved in bad things." AR 167. Given this lack of information, the police's failure to investigate the incident further did not demonstrate that the Peruvian government was unwilling or unable to control the private actors. The BIA and IJ's finding that Cisneros did not meet her burden of showing the government's unwillingness or inability was, therefore, supported by substantial evidence.

_____

to provide the police with sufficiently specific information to permit an investigation or an arrest."); *see also Samu v. Att'y Gen. U.S.*, 245 F. App'x 123, 126 (3d Cir. 2007) (concluding that police's failure to investigate where the petitioner provided no evidence or leads to pursue "does not constitute acquiescence in the claimed persecution"); *Skendaj v. Att'y Gen. U.S.*, 275 F. App'x 126, 129 (3d Cir. 2008) (concluding that failing to report an incident or provide identifying information supports BIA's finding that the government was not unwilling or unable to control the purported persecutors); *Pierre v. Att'y Gen. U.S.*, 388 F. App'x 212, 215 (3d Cir. 2010) (agreeing that failure to provide police with the name of assailants "hindered the police in investigating the assault").

Cisneros also urges that the IJ erred in its application of the "unable-or-unwilling-to-control test" because it focused too heavily on the Peruvian police's response to the criminal activity of the group Juan Carlos was involved in rather than the Venezuelan motorcyclist actors who threatened Cisneros. But Cisneros failed to present this argument to the BIA. Thus, this argument is unexhausted. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 421 (2023). Even if the argument were exhausted, however, we would nevertheless conclude that the IJ did not err in concluding that Cisneros failed to meet her burden because the BIA and IJ considered both the Peruvian government's arrests and conviction of Juan Carlos and his family members for their crimes as well as the police's response to her report of the acts of the motorcyclists in concluding that she failed to prove the government was not unwilling or unable to protect her from private actors. In short, we discern no error in the BIA or IJ's decisions.

## III.

For these reasons, we will deny the petition for review.