**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————————

No. 20-3211

——————————

ORLANDO ERNESTO HERNANDEZ GARMENDIA,

Petitioner
v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA

——————————

On Petition for Review of an
Order of the Board of Immigration Appeals
(A209-346-841)
Immigration Judge: Tamar H. Wilson

——————————

Submitted under Third Circuit L.A.R. 34.1(a)
December 13, 2021

Before: GREENAWAY, JR., KRAUSE, and PHIPPS, *Circuit Judges*

(Opinion filed: March 16, 2022)

Stuart M.L. Altman
Suite 3g
2 Allen Street
New York, NY 10002
    *Petitioner*


Merrick Garland
Patricia E. Bruckner
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
    *Attorneys for Appellee*

OPINION

GREENAWAY, JR., *Circuit Judge*

**I**

Petitioner Orlando Ernesto Hernandez Garmendia seeks review of the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT" or "torture convention"). He argues both that he is eligible for relief on the merits, and that the underlying proceedings were tainted by due process violations. We hold that substantial evidence supports the denial of relief by the

Immigration Judge ("IJ") and subsequent affirmance by the Board of Immigration Appeals ("BIA" or "Board"). We also hold that his due process rights were not violated during the removal proceedings. We will deny this petition for review.

## II

Hernandez Garmendia testified that he entered the United States for the first time on February 23, 2017.[1] On November 13, 2019, the Department of Homeland Security arrested Hernandez Garmendia after identifying him as an active MS-13 gang member. He initially appeared pro se at a removal hearing on December 10, 2019. After the IJ granted a continuance for Hernandez Garmendia to secure counsel, he appeared before the IJ again on December 31, 2019, without counsel. Nevertheless, that day, Hernandez Garmendia stated to the court that he was ready to proceed without counsel, and he had "no" mental health issues. The IJ then explained to Hernandez Garmendia, in detail, his procedural rights during the removal proceedings. Hernandez Garmendia stated he understood the rights that the court had explained to him.

Based on the evidence presented, the IJ found Hernandez Garmendia removable, but permitted him to file for asylum, withholding of removal, and CAT protections. While still in custody, and now represented by counsel, Hernandez Garmendia filed an application for asylum and withholding of removal. A native of El Salvador, his application asserted his eligibility for relief based on membership in a particular social

---

[1] The Department of Homeland Security submitted exhibits showing that Hernandez Garmendia had previously been returned to El Salvador in 2016.

group, political opinion, and the torture convention. By the time of his merits hearing a few months later, Hernandez Garmendia's counsel had withdrawn, and he once again represented himself pro se.

During the merits hearing, Hernandez Garmendia confirmed that he wanted to proceed pro se. He testified that he came to the United States "because of some issues that [his] relatives, and specifically, [his] uncle had with someone." A.R. 104. He explained that in 2012, an unknown person shot his uncle because of a "rivalry or animosity . . . between them." A.R. 104-105, 109. Despite this shooting, Hernandez Garmendia testified that his uncle, his uncle's wife, and his grandfather still live in the same home and that no one had since threatened him or his family. When questioned about inconsistencies with his application, Hernandez Garmendia stated that he "just d[id]n't remember" and that he had "issues remembering things apparently." A.R. 116.

This statement touched off a brief colloquy between the IJ and Hernandez Garmendia about the asserted memory issues. The IJ inquired as to why Hernandez Garmendia had alleged memory issues, and Hernandez Garmendia speculated that it could be because of a prior nose surgery, though he did not know how the surgery could affect his memory. Hernandez Garmendia also raised the possibility of epilepsy, but admitted that he had never received such a diagnosis. Hernandez Garmendia did not press the political opinion or torture grounds during the merits hearing despite checking those boxes in his initial application.

After the merits hearing, the IJ issued an oral decision denying Hernandez Garmendia's application for asylum,

4

withholding of removal, and CAT protections and ordering him removed to El Salvador. As an initial matter, the IJ found that Hernandez Garmendia's application was untimely because he failed to show that an exception to the one-year requirement applied in his case. The IJ next found that Hernandez Garmendia's testimony was not credible because it was both internally inconsistent and implausible. The IJ explained that Hernandez Garmendia's testimony that he was only a look-out and able to exit the MS-13 gang by simply asking to do so was "completely inconsistent with the operations of MS-13." A.R. 45. Also, despite checking the box for political opinion and membership in a particular social group, the IJ found that "no social group was stated in the application or subsequently . . . on the record, and no social group can be inferred from the testimony." A.R. 47. After making this credibility determination, the IJ found no past persecution. She also found no well-founded fear of future persecution, because Hernandez Garmendia failed to show that he would be both individually targeted and targeted based on a protected ground.

The BIA conducted its own analysis and affirmed the IJ's determinations. It noted that Hernandez Garmendia did not contest the IJ's determination that he had suffered no past persecution and was therefore not entitled to a presumption of a well-founded fear of future persecution. Likewise, the Board concluded that Hernandez Garmendia had forfeited his political opinion ground for asylum, because he did not challenge the IJ's finding on appeal. Although the BIA concluded that Hernandez Garmendia failed to articulate a particular social group before both the IJ and on appeal, it reasoned that even if the Board construed his stated fears as a family-based asylum claim, the IJ properly found that he failed to establish that fears of future harm would be on account of a

5

protected ground. Because Hernandez Garmendia failed to establish a right to asylum, the Board next concluded that he failed to meet the higher bar for withholding of removal. As to CAT protection, the BIA concluded that Hernandez Garmendia was not entitled to relief because he failed to present evidence that he would more likely than not be tortured if removed.

Lastly, the Board also reviewed Hernandez Garmendia's argument on appeal that the immigration court proceedings had violated his right to due process. It concluded that the IJ did not violate his due process rights by failing to develop the record or provide a fundamentally fair hearing. Hernandez Garmendia then petitioned this Court for review.

We now deny his petition.

### III

The BIA has appellate jurisdiction over immigration judge decisions in removal proceedings pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have exclusive jurisdiction to review a final order of the Board pursuant to 8 U.S.C. § 1252(a).

This Court will uphold Board determinations "if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We reverse these determinations only if "the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1. Challenges to factual matters will likewise be

6

reviewed for substantial evidence. *Thayalan v. Att'y Gen.*, 997 F.3d 132, 137 (3d Cir. 2021) (citation omitted). These administrative findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Where, as here, the BIA expressly adopts the reasoning of the IJ in issuing its own decision on the merits, we may review both decisions. *Zhi Fei Liao v. Att'y Gen.*, 910 F.3d 714, 718 (3d Cir. 2018).

We review de novo underlying determinations of constitutional due process claims. *Fadiga v. Att'y Gen.*, 488 F.3d 142, 153-54 (3d Cir. 2007) (discussing the standard of review for claims grounded in Fifth Amendment rights arising in immigration proceedings).

**IV**

**a. Substantial Evidence Supports the Finding that Petitioner Failed to Establish Eligibility for Asylum, Withholding of Removal, and Convention Against Torture Relief.**

**i. Asylum**

The Attorney General may, in the Attorney General's discretion, grant asylum to a noncitizen who qualifies as a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A). *See* 8 U.S.C. § 1158(b)(1). A refugee is a noncitizen who is outside of their native country, or the country where they habitually resided, and is unable or unwilling to return and avail themselves of the protections of that country, because of a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

7

political opinion." 8 U.S.C. § 1101(a)(42)(A). Noncitizen-applicants bear the burden of proving eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(i). They can do so in two ways: (1) proving past persecution on account of a protected ground, which creates a rebuttable presumption of a well-founded fear of future persecution, or (2) proving a well-founded fear of future persecution on account of a protected ground without regard to past persecution. 8 C.F.R. § 1208.13(b).

Relief based on past persecution requires noncitizens to establish that they: (1) were targeted for mistreatment on account of a protected ground, (2) the mistreatment rose to the level of persecution, and (3) the persecution was committed by the government or forces the government is unable or unwilling to control. *Thayalan*, 997 F.3d at 138 (citation and internal quotation marks omitted). In the absence of past persecution, a noncitizen may receive relief based on "showing a 'reasonable possibility' of future persecution on account of a protected ground." *Id.* (citations omitted). The noncitizen's fear of future persecution must be subjectively genuine and objectively reasonable. *Ying Chen v. Att'y Gen.*, 676 F.3d 112, 115 (3d Cir. 2011) (citation omitted).

As a threshold matter, Hernandez Garmendia appeals neither the IJ's determination that his application for asylum was untimely, nor the Board's assuming timeliness for purposes of its analysis. *See generally* Pet. Br.; *see also* A.R. 46. Hernandez Garmendia also does not challenge the IJ's determination that his testimony was not credible because it lacked evidence and was implausible and inconsistent. *See generally* Pet. Br.; *see also* A.R. 46. These omissions notwithstanding, we will review the merits of the asylum claim that were addressed by the IJ and BIA. *Green v. Att'y Gen.*,

8

694 F.3d 503, 507-08 (3d Cir. 2012) (reviewing IJ and BIA points of analysis that were assumed *arguendo*).

We next turn to the determinations on the merits, which Hernandez Garmendia challenges in his petition for review. Hernandez Garmendia asserted in his asylum application that he was eligible for relief on the basis of political opinion and membership in a particular social group.[2] The IJ found that there was no past persecution against Hernandez Garmendia on these grounds, and then concluded that he had also not established a well-founded fear of future harm. Although the IJ did not explain her finding of no past persecution, she explained that Hernandez Garmendia failed to show that he will be individually targeted by a person on account of a protected ground if removed to El Salvador. On review, the Board agreed with the IJ on both the lack of past persecution and no well-founded fear of future persecution.[3] We conclude that the record supports these determinations.

An asylum claim requires a nexus between the alleged protected grounds and the feared or past persecution. Such a nexus entails showing an alleged persecutor's motive, that the

---

[2] Hernandez Garmendia also indicated on this application that he was seeking asylum or withholding of removal based on the Convention Against Torture. We address this basis for relief in Section IV(a)(iii).

[3] The Board deemed waived challenges to the IJ's determination that Hernandez Garmendia had not suffered past persecution and to the IJ's determination with regard to future persecution based on political opinion.

persecutor knows or believes that the applicant possesses the protected characteristic, and that this knowledge or belief motivates the harm feared. *Elias-Zacarias*, 502 U.S. at 482-83. Here, Hernandez Garmendia did not establish a nexus between his alleged protected grounds and his fear of persecution if removed to El Salvador. Even assuming for the sake of argument that he mounted a family-based asylum claim, Hernandez Garmendia did not show that any fear of future harm would be on account of a protected ground.[4]

Hernandez Garmendia could neither identify the individual who shot his uncle and whether the shooter was in a gang, nor provide a reason why his uncle was shot. There is also no evidence in the record that the shooter was a public official or member of "forces the government is . . . unable or unwilling to control." *Thayalan*, 997 F.3d at 138 (quoting *Doe v. Att'y Gen.*, 956 F.3d 135, 141-42 (3d Cir. 2020)). While Hernandez Garmendia expressed concern about a "rivalry or animosity" between his uncle and the shooter that could lead to him also being harmed, neither he nor anyone in his family had been threatened since the 2012 shooting. A.R. at 105.

Lastly, Hernandez Garmendia's grandfather, his uncle who was shot, and his aunt still reside unharmed in the country. They even reside in the same home where the shooting

---

[4] The BIA presumed that Hernandez Garmendia's family-based claim would be premised on his uncle's shooting and alleged prior threats against his family members because the family refused to participate in illicit activities. The Board reasoned that this family-based, particular social group claim would nonetheless fail because there was no nexus between the group and the alleged fear.

10

occurred. These facts undermine Hernandez Garmendia's claimed fear of future persecution.

We conclude that "reasonable, substantial[,] and probative evidence on the record [considered as] a whole" supported the agency's finding that Hernandez Garmendia failed to establish eligibility for asylum relief. *Khan v. Att'y Gen.*, 691 F.3d 488, 496 (3d Cir. 2012) (citation and internal quotation marks omitted).

### ii. Withholding of Removal

An even more stringent standard than asylum, withholding of removal requires noncitizens to show that it is "more likely than not" that they will suffer persecution on account of a protected ground. *Shardar v. Ashcroft*, 382 F.3d 318, 324-25 (3d Cir. 2004); *see also* 8 U.S.C. § 1231(b)(3)(A).

As we have concluded that Hernandez Garmendia failed to prove eligibility for asylum, we now also conclude, *a fortiori*, that the more stringent standard for withholding of removal has also not been met. *Shardar*, 382 F.3d at 324 ("Having concluded substantial evidence supports the BIA's denial of asylum, we conclude that withholding of removal was also properly denied.").

### iii. Convention Against Torture

Regulations implementing CAT protections prohibit removing a noncitizen to a country where the person is "more likely than not" to be "tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). To sustain this relief, a noncitizen must show that, if removed to the proposed

11

country, they will be tortured by or with the consent or acquiescence of a public official. 8 C.F.R. § 1208.18(a)(1). The specter of torture must be supported by specific evidence that the individual applicant is more likely than not to be singled out. *Denis v. Att'y Gen.*, 633 F.3d 201, 218 (3d Cir. 2011). On appeal, Hernandez Garmendia argues that the IJ erred when she "did not state what if any evidence the Petitioner should have provided" "to support that he is more likely than not going to be tortured if he returns to El Salvador." Pet. Br. at 19. This argument is meritless.

The IJ made several findings in support of the denial of CAT protection for Hernandez Garmendia. She explained that Hernandez Garmendia did not know who would torture him; it was unclear whether the feared harm, if it occurred, would be at the hands or with the acquiescence of the government; there was a lack of objective evidence establishing that objective grounds existed for protection; and that he made only generalized statements insufficient to show that harm would more likely than not result if returned to El Salvador. A.R. at 47-48. The record before us in no way supports a contrary result (i.e., granting CAT protection), let alone compels one. *See Thayalan v. Att'y Gen.*, 997 F.3d at137 (relying on *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020)); 8 U.S.C. § 1252(b)(4)(B).

### b. Petitioner's Due Process Claims Lack Merit.

Regardless of a person's citizenship status, "'all persons within the territory of the United States are entitled to the protection' of the Constitution." *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001) (quoting *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)). These protections include due process

12

for noncitizens during removal proceedings. *Kamara v. Att'y Gen.*, 420 F.3d 202, 211 (3d Cir. 2005). This due process guarantee entitles a noncitizen to: "(1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his [or her] interests." *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017) (citation and internal quotation marks omitted).

Although as a general matter, claims in a petition for review must have been exhausted before the Board, *Zhi Fei Liao*, 910 F.3d at 718, "exhaustion of administrative remedies is not always required when the petitioner advances a due process claim." *Khan v. Att'y Gen.*, 448 F.3d 226, 236 n.8 (3d Cir. 2006) (citations omitted). In either circumstance, the noncitizen claiming a breach of the entitled protections also bears the burden of showing that the alleged breach caused actual prejudice. *Morgan v. Att'y Gen.*, 432 F.3d 226, 234-35 (3d Cir. 2005).

### i. Hernandez Garmendia's Due Process Claims Were Exhausted.

The Government argues primarily that Hernandez Garmendia failed to exhaust his due process claims because he did not raise them before the IJ or the Board. Although we ultimately agree that the immigration proceedings did not violate Hernandez Garmendia's constitutional rights, we first hold that these claims were exhausted and therefore within our jurisdiction to review.

We have stated that the exhaustion requirement is not applied "in a draconian fashion." *Zhi Fei Liao*, 910 F.3d at 718

13

(quoting *Lin v. Att'y Gen.*, 543 F.3d 114, 121 (3d Cir. 2008)). Instead, the policy is "liberal" and a noncitizen "need not do much to alert the Board that he is raising an issue . . . [s]o long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted [his] administrative remedies." *Id.* (alterations in original) (citations omitted).

Here, Hernandez Garmendia alerted the IJ to his "issues remembering things." A.R. at 116. Hernandez Garmendia suspected that a past "nose surgery" "affected [his] memory" and also stated that on one occasion he experienced "an epilepsy attack," though he had never been diagnosed with the condition. A.R. at 116-17. On appeal, the Board's ruling addressed due process arguments that Hernandez Garmendia raised in briefing to the Agency. The Board explained the arguments in this briefing as alleging violations of "his due process rights by not developing the record, not providing a fundamentally fair hearing, and denying his claim for protection under the Convention Against Torture." J.A. I at 7. The Board's decision, therefore, shows that the due process arguments were also raised and addressed during agency proceedings.

Yet, independent of the Board's decision, our case law supports holding that these arguments were adequately raised before the IJ and do not erect a barrier to our review. The claim that Hernandez Garmendia lacked the capacity to participate in the immigration proceedings sounds in constitutional due process and may be exempt from exhaustion before the BIA or IJ. We long ago "recognized that the exhaustion of administrative remedies is not always required when the

14

petitioner advances a due process claim." *Sewak v. I.N.S.*, 900 F.2d 667, 670 (3d Cir. 1990) (citation omitted). But, even if this exception were to apply, it would not aid Hernandez Garmendia because the immigration court did everything required to ensure that his immigration proceedings comported with due process obligations.

### ii. The Immigration Judge Appropriately Developed the Record.

In his first due process claim, Hernandez Garmendia argues that the IJ failed to develop the record because she did not ask certain questions when there was a duty to do so. Specifically, Hernandez Garmendia takes issue with not being asked: (1) to identify a particular social group or political opinion, (2) why he feared harm or persecution if removed to El Salvador, and (3) why he did not demonstrate eligibility for asylum if his testimony was assumed credible.[5] To quite the contrary, the hearing transcript unambiguously shows that the IJ made these inquiries.

Among other questions, at the April 16, 2020 hearing, the IJ asked Hernandez Garmendia: "why [he came] to the United States," "who shot [his] uncle" and "why [that person] shot [his] uncle," "why [Hernandez Garmendia was] afraid that the same thing will happen to [him]," and whether "anyone threatened anyone in [his] family with harm" or if "[he himself had] been threatened." A.R. at 104-10. When asked why he came to the United States, Hernandez Garmendia responded, "[B]ecause of some issues that my relatives, and specifically,

---

[5] We note, again, that the IJ found Hernandez Garmendia's testimony not credible.

15

my uncle had with someone." A.R. at 104. These questions in the hearing transcript belie Hernandez Garmendia's claim that the IJ failed to ask necessary questions to develop the record. To the extent that the IJ did not press the political opinion claim, the record supports that Hernandez Garmendia did not raise this claim at the hearing.

Thus, the hearing transcript shows that with respect to this first alleged due process violation, the removal proceedings comported with the immigration court's constitutional and regulatory obligations. *Leslie v. Att'y Gen.*, 611 F.3d 171, 181 (3d Cir. 2010) ("[Noncitizens] in removal proceedings are entitled to Fifth Amendment Due Process protection, which guarantees them a fundamentally fair removal hearing.") (citation omitted); *see also* 8 U.S.C. § 1229a.

### c. The Record Supports that Petitioner Was Sufficiently Competent to Participate in the Proceedings Without Special Safeguards.

In his second due process claim, Hernandez Garmendia argues that the IJ should have conducted a *Matter of M-A-M-* hearing. We disagree.[6]

Participants in removal proceedings are presumed competent, and an immigration judge need not review a noncitizen's competency "[a]bsent indicia of mental incompetency." *Matter of M-A-M-*, 25 I. & N. Dec. 474,

---

[6] We limit our discussion to the particular issue raised by Hernandez Garmendia (i.e., the circumstances in which a *Matter of M-A-M-* hearing is warranted).

477(BIA 2011). In *Matter of M-A-M-*, the BIA established a three-part test to determine whether a noncitizen is mentally incompetent when the IJ is presented with indicia of incompetency. *Id*. at 484. This test asks whether the noncitizen: "has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses." *Id*. at 479. Only if the individual presents indicia of incompetency and the IJ determines that the individual lacks sufficient competency is a duty triggered to impose safeguards on the proceedings. *Id*. at 481-83.

Indicia of incompetency may arise from the behavior of the individual, or from record evidence of mental illness and incompetency. *Id*. at 477-80. As to behavior, the BIA explained in *Matter of M-A-M-* that this indicator could include a "high level of distraction," or an inability to respond to questions or to stay on topic. *Id*. at 479.

Here, not only were there no indicia of mental incompetency, Hernandez Garmendia engaged in a responsive and appropriate colloquy with the judge, consulted with counsel, and presented evidence on his behalf. He had legal counsel at some points during his removal proceedings, but also affirmed that he was able to represent himself and understood the rights the court explained to him. Transcripts of Hernandez Garmendia's hearings show him interacting with the IJ without difficulty understanding the questions as they were posed. To this end, he gave substantive testimony to support his claim of eligibility for asylum, withholding of removal, and CAT protections. The administrative record also shows that Hernandez Garmendia denied any mental health

17

issues and any past diagnoses of medical issues related to memory.

The hearing transcripts show that Hernandez Garmendia presented no indicia of incompetency. Therefore, greater scrutiny and procedural safeguards were not warranted and there was no error by the IJ for failing to engage in that scrutiny or impose additional safeguards.

## V

For the foregoing reasons, we will deny the petition for review.

18