**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————————

No. 21-2821

——————————

STEFAN DANCAK,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

——————————

On Petition for Review of an
Order of the Board of Immigration Appeals
(A201-792-942)
Immigration Judge: Pallavi Shirole

——————————

Submitted Pursuant to L.A.R. 34.1(a) on
July 14, 2022

——————————

Before: GREENAWAY, JR., MATEY, and NYGAARD, *Circuit Judges*

(Opinion filed: August 29, 2022)

——————————

OPINION*

——————————

**GREENAWAY, JR**., *Circuit Judge*

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## I. Introduction

Petitioner Stefan Dancak seeks review of the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). He argues that the Board of Immigration Appeals ("BIA" or "Board") erred because it: (1) concluded that he did not suffer from past persecution the Slovakian government was unable or unwilling to control; (2) concluded that he does not have a well-founded fear of future persecution in Slovakia; and (3) affirmed the Immigration Judge's denial of protection under CAT. We hold that substantial evidence supports the denial of relief by the Immigration Judge ("IJ") and subsequent affirmance by the BIA. We will deny this petition for review.

## II. Background

Dancak, a native and citizen of Slovakia, entered the United States on July 4, 2017 on an F-1 student visa. He affirmatively applied for asylum on March 26, 2019. *Id.* at **20, 550.** United States Customs and Immigration Services ("USCIS") conducted an initial interview with Dancak. USCIS then cancelled his follow-up interview, but issued an employment authorization document. While awaiting a rescheduled follow-up interview, Dancak began working in New York City. Before being notified of his new interview date, however, the COVID-19 pandemic hit.

Dancak mistakenly believed he could leave the United States. So, he departed for a friend's home in Mexico City on March 28, 2020 to escape the rising cases in New York City. Once in Mexico, the Mexican government denied Dancak entry, and he returned to New York City. Upon return, the United States detained Dancak at the

2

Elizabeth Detention Center in Elizabeth, New Jersey.  Dancak then applied for "[re]admission."  A.R. 76, 604 (discussing Dancak's application filed on March 29, 2020).

The Department of Homeland Security ("DHS") subsequently initiated removal proceedings on April 28, 2020, and issued Dancak a Notice to Appear on May 4, 2020. DHS charged Dancak as removable under Immigration and Nationality Act Section 212(a)(7)(A)(i)(l) for failing to present valid entry documents.  Dancak later submitted updated applications for asylum, withholding of removal, and CAT protection on June 11, 2020 and August 10, 2020.

In his application, Dancak asserted eligibility for relief based on membership in a particular social group and under CAT.  Dancak explained that in Slovakia his father and others in the community subjected him to emotional, psychological, and physical abuse because he was gay.  Dancak's application highlighted how his father would "get intoxicated and scream" in public that "his son was gay."  A.R. 545.  Dancak also claimed that his father physically abused him because he suspected his son was gay. Dancak alleged that his mother likewise feared his father.  Thus, on one occasion when Dancak was 16 years old, he called the police to report the abuse his mother suffered. Authorities detained Dancak's father for one month before his father received two years' probation and his mother was issued an order of protection.

Although the alleged harm started when Dancak was in elementary school, it continued through his post-secondary studies at a university in Slovakia.  One incident included a kidnapping at a gas station.  At the gas station, four men confronted Dancak,

3

entered Dancak's vehicle, and forced him to drive to an abandoned warehouse. At the warehouse, the men beat Dancak before looking through his phone and discovering text messages and photos between him and another man, which revealed Dancak was gay. The four men then resumed beating Dancak, this time also demeaning him with anti-gay insults. The kidnappers also poured alcohol on Dancak's body and called his mother to demand ransom money. The Slovakian government eventually prosecuted the individuals who kidnapped and beat Dancak, seven years later.

Dancak's asylum application also expressed a fear of returning to Slovakia because he faces incarceration for a financial crime. In 2009, Dancak contracted with several schools to construct school buildings. Dancak hired a subcontractor to complete portions of the work because he, Dancak, did not have the necessary licenses. Dancak paid the subcontractor with funds received from the schools, but the subcontractor failed to perform. Subsequently, charges were brought against Dancak for which he was convicted in 2016. Although there were years of procedural machinations, the conviction stood and he was sentenced to prison. He absconded and an arrest warrant is still outstanding.[1] Dancak asserts that he only learned of the result of the proceeding and the warrant after filing his asylum application at the Elizabeth Detention Center. Dancak fears imprisonment in Slovakia where he "will be attacked by other inmates because [he is] gay" or "placed in solitary confinement for years for [his] own protection." A.R. 536.

---

[1] Dancak's asylum application also mentioned another outstanding warrant for an alleged fraud incident in 2012. Dancak has a total of nine fraud or fraud-related convictions in Slovakia.

4

The IJ denied Dancak relief as to his request for asylum, withholding of removal, and protection under CAT. On appeal, the BIA reversed in part and affirmed in part the IJ's ruling. As relevant here, the Board affirmed the IJ's determination that Dancak failed to demonstrate that there is a pattern or practice of persecution against similarly situated individuals. The Board then concluded that Dancak failed to show that the Slovakian government was unwilling or unable to protect him from the feared persecution. Lastly, it determined there was "insufficient reason to disturb the Immigration Judge's" conclusion that Dancak failed to qualify for protection under CAT. A.R. 5. Dancak timely filed this petition for review.

## III.    Jurisdiction and Standard of Review

The BIA had jurisdiction to review the Immigration Court's final order of removal pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction over Dancak's petition for review under 8 U.S.C. § 1252(a).

We review an agency's determinations for substantial evidence in the record. *Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 482 (3d Cir. 2022); *see also Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 91–92 (3d Cir. 2021) (explaining that we review determinations of a government's inability or unwillingness to respond for only substantial evidence). We will reverse an agency's determinations "only if 'the evidence not only *supports* [a contrary] conclusion, but *compels* it.'" *Id.* (alterations in original) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)); *see also* 8 U.S.C. § 1252(b)(4)(B). As relevant here, when evidence in the record "cuts both ways" we are

5

not compelled to conclude contrary to the agency. *Kayembe v. Ashcroft*, 334 F.3d 231, 235–37 (3d Cir. 2003); *see also Galeas Figueroa*, 998 F.3d at 91–92.

## IV.  Discussion

Dancak asserts that the BIA incorrectly concluded that he did not suffer from past persecution the Slovakian government was unwilling or unable to control, and that he did not have a well-founded fear of future persecution. Dancak also asserts the BIA erred by affirming the IJ's denial of protection under CAT.  We address each of these issues in turn.

### a.  Asylum

The Attorney General of the United States may use the office's discretion to grant asylum to a noncitizen who qualifies as a refugee under 8 U.S.C. § 1101(a)(42)(A). *See* 8 U.S.C. § 1158(b)(1)(A).  A refugee is a noncitizen outside of their native country, or the country where they habitually reside, who is unable or unwilling to return and avail themselves of the protections of that country.  8 U.S.C. § 1101(a)(42)(A).  The noncitizen must also be unable or unwilling to return because of a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.*  Noncitizens bear the burden of proving their eligibility for asylum.  8 U.S.C. § 1158(b)(1)(B)(i).  They may do so in two ways: (1) proving past persecution on account of a protected ground, which creates a rebuttable presumption of a well-founded fear of future persecution; or (2) proving a well-founded fear of future persecution on account of a protected ground without regard to a record of past persecution.  8 C.F.R. § 1208.13(b).

6

For past persecution claims, noncitizens must establish that they: (1) were targeted for mistreatment on the protected ground; (2) the mistreatment rose to the level of persecution; and (3) the persecution was committed by the government or forces the government is unable or unwilling to control. *Thayalan v. Att'y Gen.*, 997 F.3d 132, 138 (3d Cir. 2021) (citation and internal quotation marks omitted). By contrast, a noncitizen may obtain relief for a well-founded fear of future harm by "showing a 'reasonable possibility' of future persecution on account of a protected ground." *Id.* (citations omitted).

Dancak first asserts that we should remand to the BIA and direct that it clearly identify which standard of review—clearly erroneous or de novo—it is applying. True, the BIA decision does not clearly separate the issues and the standards it applies. Nonetheless, we do not think the Board's decision, as is, requires remand.

Dancak contends that the BIA skipped over reviewing the IJ's past persecution determination before affirming the IJ's determination on the government's inability or unwillingness to respond. But, regardless of whether the review is for clear error or de novo, and even assuming that there was past persecution, we review the BIA's determination of the government's inability or unwillingness to respond for only substantial evidence. *Galeas Figueroa*, 998 F.3d at 91–92. Under that standard of review, we are not compelled to rule differently than the BIA in this case, because the evidence in the record "cuts both ways." *Kayembe*, 334 F.3d at 235–37.[2]

---

[2] In *Kayembe*, the petitioner alleged that the BIA erred by failing to consider certain helpful evidence in a State Department report. *Kayembe*, 334 F.3d at 235. We

The BIA inaccurately stated that the police responded when Dancak called to report his father about abuse, and that his father was subsequently prosecuted. Dancak called on behalf of his mother, not himself, and that was unambiguous in the record. However, other evidence in the record is considerably more mixed. For instance, it does not appear that the initial reason for the kidnapping and beating was motivated by Dancak's sexual orientation, though discovery of his orientation preceded the men verbally demeaning him with anti-gay insults. And, though these men were eventually prosecuted, the prosecution occurred seven years later.[3]

Other evidence in the record about the social and political conditions in Slovakia also cuts both ways. For example, in 2010, neo-nazis were arrested after disrupting a pride parade and the parade went "undisturbed" in 2013. A.R. 4, 94. Nonetheless, the parade had to be cancelled in 2015, as activists felt that a civil partnership campaign had generated "a negative atmosphere." A.R. 242. Likewise, pro-gay rights officials have been elected in Slovakia and the country has legislation prohibiting discrimination based on sexual orientation, but the Slovakian parliament still has members who are anti-gay neo-nazis. **A.R. 79, 94–95, 183, 470.** When evidence cuts both ways, our substantial

acknowledged that the petitioner was "correct that the State Department Report" contained helpful information for his claimed fear of future persecution. *Id.* at 235–36. But the report also contained information that undermined the petitioner's claim. *Id.* at 236. Therefore, "[j]ust because the State Department report cut[] both ways, . . . [it] d[id] not mean that it d[id] not constitute substantial evidence." *Id.*

[3] At his removal hearing, the IJ noted that "there seem[ed] to be a pattern with cases in Slovakia not being tried or charged until five years, six years, seven years later." A.R. 198. Dancak agreed that "unfortunately[,] . . . justice in Slovakia . . . [is] very, very slow." *Id.*

evidence review gives deference to the Agency's determination. *See Kayembe*, 334 F.3d at 235–37. Therefore, we are not compelled to conclude contrary to the BIA or remand the case.

Dancak next asserts that the BIA erred in concluding that he did not have a well-founded fear of future persecution. Dancak relies principally on his fear of persecution should he return to Slovakia and serve prison time for his conviction in that country. As with past persecution, the evidence here cuts both ways. For instance, Dancak points to complaints of excessive force by police, and visible minorities—such as Roma individuals—being more frequently subjected to police ill-treatment and abuse. However, among other evidence in the record, the IJ also had before her a then recent United States Department of State report, which found no significant reports of incarceration conditions that raised human rights concerns.

Because the evidence in the record "cuts both ways" here too, we are again not compelled to conclude contrary to the BIA as to Dancak's claim of future persecution. *Kayembe*, 334 F.3d at 235–37.

Lastly, Dancak argues that the BIA "cherry-picked" evidence and that its conclusion goes against the substantial weight of the evidence in the record. Pet. Br. at 9, 14–15, 36, 42. However, as explained above, the evidence in the record cuts both ways. Further, the BIA stated that the men who kidnapped and harmed Dancak were eventually prosecuted only as an example of evidence in the record. It did not state that its decision

9

relied solely on that fact.[4]  Because the Agency's determination as to the inability or the unwillingness of a government to respond is reviewed only for substantial evidence, and the evidence here cuts both ways, we will again defer to the Agency's determination on these issues.  *See Kayembe*, 334 F.3d at 235–37; *see also Figueroa*, 998 F.3d at 91–92.

Accordingly, we will deny the petition on this ground for relief.

### b.  Withholding of Removal

The standard for relief under withholding of removal "is higher than, albeit similar to, the standard for asylum."  *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003) (citation omitted).  Thus, if a petitioner cannot satisfy the standard for asylum, the petitioner "necessarily fails to meet the standard for withholding of removal under [the INA]."  *Id.*

We determined that Dancak did not satisfy eligibility for asylum.  Therefore, he cannot meet the higher bar for withholding of removal.  *Shardar v. Ashcroft*, 382 F.3d 318, 324 (3d Cir. 2004).  Accordingly, we will deny the petition on this ground for relief.

### c.  Convention Against Torture

Lastly, Dancak argues that he is eligible for CAT protection.  CAT regulations prohibit removing a person to a country where the person is "more likely than not" to be "tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2).  Noncitizens bear the burden to provide eligibility for CAT protection.  *Id.*  To that end,

---

[4] Indeed, the Board raised other facts in the recording, including the arrest of neo-nazis disrupting pride parades, legislation banning anti-gay discrimination, and the election of pro-gay rights officials.

10

they must show, among other things, that if removed to the proposed country, they will be "tortured 'by or at the instigation of or with the consent or acquiescence of' a public official." *Roye v. Att'y Gen.*, 693 F.3d 333, 341 (3d Cir. 2012) (quoting 8 C.F.R. § 208.18(a)(1)).

As relevant here, when assessing CAT claims for government acquiescence, the Agency must follow a two-pronged analysis set forth in *Myrie v. Att'y Gen.*, 855 F.3d 509, 517 (3d Cir. 2017). Under this analysis, the IJ must: (1) make factual findings as to how government officials will respond to the feared harm, and (2) assess whether the likely response qualifies as acquiescence. *Arreaga Bravo v. Att'y Gen.*, 27 F.4th 182, 188 (3d Cir. 2022) (quoting *Myrie*, 855 F.3d at 516–17). Dancak argues that the IJ failed to make factual findings of what would happen to him if removed to Slovakia and how the government would likely respond. We disagree.

The IJ addressed the two-pronged analysis from *Myrie*. As to the government's likely response, the IJ "addressed the improving conditions for LGBT individuals in Slovakia" and credited a 2019 State Department report which found no significant reports of incarceration conditions that raised human rights concerns. A.R. 96. Continuing the analysis, the IJ made predictive findings, assuming *arguendo*, that Dancak would be tortured. The IJ concluded that the government would respond appropriately if Dancak were tortured. Specifically, the IJ reviewed evidence of Dancak's kidnappers being prosecuted, the country's legal protections against anti-gay discrimination, police protection during pride marches, and "increased recognition for LGBT rights" by the country's president and ombudsperson. *Id.* at 98.

11

Accordingly, we will also deny the petition as to eligibility for CAT relief.

## V.     Conclusion

For the foregoing reasons, we will deny the petition for review.