NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1373
_____

IRIS IVETTE RODRIGUEZ MARTINEZ;
RIQUELMEY LIONEL MARTINEZ-RODRIGUEZ;
NELSON EDINELSON MARTINEZ-RODRIGUEZ,
                                        Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the Board of Immigration Appeals
(Agency Nos. A202-002-396, A202-002-397, A202-002-398)
Immigration Judge: Richard Drucker
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on November 6, 2025

Before: PHIPPS, ROTH, and RENDELL, *Circuit Judges.*

(Filed: April 30, 2026)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

RENDELL, *Circuit Judge*.

Petitioner Iris Ivette Rodriguez-Martinez[1] petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of her applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We discern no cognizable error in the BIA's and IJ's decisions. Accordingly, we will deny the petition.

I.

Martinez and her two sons are natives and citizens of El Salvador. In June 2014, while living in El Salvador, Martinez began receiving phone calls from purported members of a gang. These persons threatened to kill her and her sons if she did not pay them $150. As a result, Martinez stayed in her home and did not leave. One day, however, Martinez left to buy food when an alleged gang member approached her and told her that because she had not paid, the gang would give her the opportunity to leave or else the gang would kill them.

Martinez reported the threats to a police officer who was a member of her church. She told him that she wanted to file a police report, but the officer warned her to be careful because some of his fellow officers were allegedly involved in gang activity. Nevertheless, Martinez filed a police report detailing the threats she received. She showed the phone calls she received to the police, and officers listened to the voicemails that the gang members left. However, as the phone calls were placed using private

---

[1] Martinez is the lead petitioner for her and her two sons. The opinion refers to the petitioners and their claims collectively.

2

numbers and Martinez could not otherwise provide the police with information to identify these callers nor a description of the person who had threatened her while she was buying food, the police told her that there was little they could do. Martinez conceded that she was unsure what else the police could have done with the limited information that she provided.[2] So, she decided to leave for the United States.

She and her sons entered the United States without inspection on August 10, 2014. The Department of Homeland Security issued a Notice to Appear to them on August 7, 2014. She and her sons conceded removability but applied for asylum, withholding of removal, and CAT protection.

The IJ denied their applications for asylum and withholding of removal, finding that (1) Martinez failed to demonstrate that she had been persecuted, (2) even if she could demonstrate persecution, she could not establish that it was on account of her membership in a particular social group ("PSG"), and (3) she could not demonstrate that the government would be unwilling or unable to control the gang members who threatened her. With respect to her CAT claim, the IJ denied the application on the ground that Martinez could not carry her burden of showing a likelihood of future torture with the government's acquiescence.[3] She appealed.

---

[2] At Martinez's hearing, she also testified regarding threats and harm suffered by her family. She explained that eight years earlier, "[i]n the year 2006, the[] [gang] threatened three of my brother[s]-in-law." AR158. And that the gang ultimately murdered each of them. It is unclear from the record whether she provided this information to the police when she filed her report regarding the threats she received in 2014. It is clear from the record that the police responded to the murder scene at that time.

[3] The IJ sua sponte took notice of "the most recent U.S. State Department Country Report for El Salvador," after noting that neither party introduced or sought to admit it into the

On appeal, the BIA agreed with the IJ's conclusion that her proposed PSGs were not cognizable and found no clear error in the IJ's determination that Martinez could not establish persecution on account of a protected ground. The BIA also agreed with the IJ's determination that Martinez did not meet her burden of establishing a likelihood of future torture with the government's acquiescence to qualify for protection under CAT. She petitioned for review.

II.[4]

Martinez challenges various aspects of the IJ's and BIA's decisions. With respect to the denial of asylum and withholding of removal, she claims that (1) the IJ erred in finding that the threats she received did not constitute persecution, (2) the IJ and BIA erred in concluding her proposed PSGs were not cognizable, and (3) the IJ erred in concluding a nexus did not exist between her persecution and proposed PSGs. Because the IJ's conclusion regarding the lack of sufficient nexus is dispositive, we need not reach

---

record. AR124. Unsurprisingly, given neither party relied on the report in the proceedings before the IJ, Martinez also did not rely on the report in urging the reversal of the IJ's decision as to acquiescence in her appeal to the BIA.

[4] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252(a)(1). Where the BIA relies on and adopts the IJ's decision, and conducts its own independent analysis, we review both the BIA's and IJ's decisions. *S.E.R.L.*, 894 F.3d at 543. Here, the BIA relied on and adopted all factual findings of the IJ; thus, we review both decisions. The BIA's determinations must be upheld "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). We review the BIA's legal conclusions *de novo*. *Toussaint v. Att'y Gen.*, 455 F.3d 409, 413 (3d Cir. 2006).

4

her claims regarding past persecution[5] or her proposed PSGs.[6]  With respect to the denial of protection under CAT, Martinez claims that the IJ and BIA erred by failing to consider evidence of government acquiescence.  We disagree.

A.

The IJ did not err in concluding that a nexus did not exist between Martinez's persecution and proposed PSGs.  To be eligible for asylum, an applicant must demonstrate "past persecution on account of a protected ground, which creates a rebuttable presumption of a well-founded fear of future persecution" or "a well-founded fear of future persecution on account of a protected ground without regard to past persecution."  *Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 482 (3d Cir. 2022) (citing 8 C.F.R. § 1208.13(b)). That is, there must be "a nexus between the alleged protected grounds and the feared or past persecution."  *Id.* at 483.  To obtain withholding of removal, an applicant must demonstrate "that it is more likely than not that s/he would be persecuted if returned home."  *Saban-Cach v. Att'y Gen.*, 58 F.4th 716, 724 (3d Cir. 2023).

An asylum applicant establishes a nexus by demonstrating that a protected ground, such as membership in a PSG, is "at least one central reason" for the applicant's

---

[5] We note that the alleged threats made to Martinez in the context of the threats and violence meted out upon her brothers-in-law are disturbing and significant.  However, as we resolve this case on the ground of Martinez's failure to establish a nexus, we need not resolve whether the IJ and BIA erred in concluding that she had not suffered past persecution.

[6] Although we do not take issue with the Dissent's critique of the brevity of the IJ and BIA's analysis, we recognize, as does the Dissent ultimately, that it is the Petitioner's burden to prove her entitlement to relief, which she has not done on this record.

persecution and not merely "an incidental, tangential, or superficial role [for the] persecution." 8 U.S.C. § 1158(b)(1)(B)(i); *Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 130 (3d Cir. 2009). "Establishing a nexus entails showing an alleged persecutor's motive, that the persecutor knows or believes that the applicant possesses the protected characteristic, and that this knowledge or belief motivates the harm feared." *Hernandez Garmendia*, 28 F.4th at 484.

Assuming, without deciding, that Martinez's proposed PSGs are legally cognizable, we discern no error in the IJ's conclusion that Martinez cannot demonstrate the threats she received were, or fears she will receive if removed are, motivated by her membership in a PSG. Martinez contends that she and her sons were targeted because she is an unemployed single parent who is enrolled in school, with a family member in the United States, who has refused to make payments to a gang. However, Martinez presented no evidence that the gang would not have attempted to extort her if she did not possess those characteristics. By that same token, Martinez failed to present evidence that the gang targeted her because of her membership in some PSG rather than out of a simple desire for financial gain through extortion.

## B.

The IJ also did not err in denying Martinez CAT relief. Under CAT, an applicant must demonstrate it is more likely than not that (1) she will be tortured if removed, (2) by or with the acquiescence of government officials. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). Evidence of willful blindness must be considered for assessing government acquiescence of future torture. *Myrie v. Att'y Gen.*, 855 F.3d 509, 517 (3d

6

Cir. 2017). Relevant evidence of the country's conditions, if presented, must also be considered. 8 C.F.R. §§ 1208.16(c)(3)(iv).

Here, Martinez failed to adduce evidence to establish she would be tortured with government acquiescence upon removal. Indeed, the record contradicts her position. The police accepted Martinez's complaint and generated a report documenting the threats. However, as she could not identify the gang members who threatened her and because the calls were made from a private number, the police explained that there was little to be done. And Martinez all but conceded this point in testifying that she was unsure of what else the police could have done. On these facts, we cannot conclude that the BIA or IJ erred in finding that the police did not acquiesce and were not willfully blind to the gang's prior threats to Martinez. Finally, as the Respondent noted in its brief, Petitioner failed to adduce any evidence pertaining to general conditions in El Salvador relevant to government acquiescence or willful blindness to the possibility of future torture.

### III.

For the foregoing reasons, we will deny the petition for review.

ROTH, *Circuit Judge*, concurring in part, dissenting in part.

Both the Immigration Judge and the Board of Immigration Appeals disposed of Iris Ivette Rodriguez-Martinez's[1] Convention Against Torture claim in a single conclusory paragraph that provides no explanation for why Martinez failed to satisfy the CAT standard. Without such an explanation, we cannot properly review that portion of the agency's decision. I therefore part ways with my colleagues and would grant the petition for review as to the CAT claim and remand for further proceedings.

Evaluating a CAT claim requires the agency to make two determinations. First, the agency must answer whether it is "more likely than not" that the applicant "would be tortured if removed" to her native country, which requires deciding "what is likely to happen to the petitioner if removed" as a matter of fact and then determining whether "what is likely to happen amount[s] to the legal definition of torture" as a matter of law.[2] To establish a likelihood of future torture, the applicant need only show she faces an "aggregate risk" of torture exceeding fifty percent.[3] Second, the agency must determine whether public officials would acquiesce in that harm, which likewise requires a factual finding about how officials are likely to respond to the feared harm and a legal

---

[1] As the Majority does, I refer to the petitioners and their claims collectively.
[2] *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (quoting *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010)).
[3] *Herrow v. Att'y Gen.*, 93 F.4th 107, 113 (3d Cir. 2024).

1

determination about whether that response constitutes acquiescence.[4]  Our deferential review under the substantial-evidence standard presupposes that the agency made those findings.[5]

In my view, the crux of the issue with the agency's decision is not that it reached the wrong conclusion, but that it never performed the analysis required to reach any conclusion.  Specifically, the agency never articulated the underlying factual findings the CAT framework demands.  Martinez, whom the IJ found credible, testified that gang members of Mara Salvatrucha repeatedly called and threatened to kill her and her children unless she paid them money.  The members detailed the family's movements and schedules, making clear they were watching them.  Fearing for her children's safety, Martinez removed them from school and kept them at home.  Martinez herself left the house only to buy food.  On one such trip, a gang member approached Martinez and repeated the threats in person, warning that if she did not pay or leave the country, the gang would "bury [her] and bury [her] children."[6]  Martinez sought advice from a police officer who attended her church, who warned her to exercise caution in reporting the threats to police because some officers were allegedly involved in gang activity.

---

[4] *See Myrie*, 855 F.3d at 516–17.

[5] *See Dia v. Ashcroft*, 353 F.3d 228, 243 (3d Cir. 2003) (en banc) (requiring the agency to "put forth a sufficiently reasoned opinion" for judicial review); *Toure v. Att'y Gen.*, 443 F.3d 310, 316 (3d Cir. 2006) ("An IJ must support her factual determinations with 'specific, cogent' reasons . . . . [f]ailure to do so 'does not pass muster under the substantial evidence rubric.'"); *Kayembe v. Ashcroft*, 334 F.3d 231, 238–39 (3d Cir. 2003) (remanding where the BIA failed to make necessary factual findings, leaving court unable to conduct a "meaningful[] review" under the substantial-evidence standard).

[6] AR 157.

Martinez ultimately reported the threats to the police. She provided voicemails and told officers the callers were affiliated with Mara Salvatrucha. She testified that officers told her "they could not do anything" because she had not been physically harmed, the threats "were just calls," and calls from private numbers were "very hard to investigate."[7] Martinez repeatedly testified that the police did nothing in response to the death threats and that, in the end, "nothing was done" to protect her and her children.[8]

Martinez's testimony about repeated death threats from Mara Salvatrucha, the gang's surveillance of her family, and the authorities' apparent inaction following her complaint bears directly on what harm she is likely to face if removed and how public officials would respond to that harm.[9] Yet the agency never tied this—nor any—record evidence to its denial of CAT relief. Nor did it make the required factual findings about what harm Martinez is likely to face if removed and how public officials would respond. Instead, the IJ offered only a bare conclusion that Martinez had not met her burden for relief, and the BIA affirmed without addressing that gap.

The IJ's discussion of the record evidence for purposes of evaluating Martinez's asylum claim cannot substitute for the missing analysis required under the CAT. We have previously explained that CAT claims are "analytically distinct," and that the denial of asylum or withholding of removal "does not control" the CAT claim analysis.[10]

---

[7] AR 156, 171–72.

[8] AR 172–73.

[9] *See Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 349–50 (3d Cir. 2008); *Myrie*, 855 F.3d at 517–18.

[10] *Ghebrehiwot v. Att'y Gen.*, 467 F.3d 344, 358 (3d Cir. 2006) (quoting *Zubeda v. Ashcroft*, 333 F.3d 463, 476 (3d Cir. 2003), *abrogated on other grounds by Auguste v. Ridge*,

3

The Majority acknowledges that the threats against Martinez and her children were "disturbing and significant," yet affirms a decision that never analyzed what harm Martinez is likely to face if removed or how public officials would respond.[11] The Majority effectively furnishes the analysis the IJ never performed, undertaking its own assessment of the record instead of reviewing the agency's reasoning. But it is the IJ's role to articulate the factual basis for denying relief in the first instance, not ours.[12]

The IJ also entirely failed to address other record evidence bearing directly on government acquiescence. Martinez testified that three of her brothers-in-law were murdered by the same gang after receiving similar threats. In her sworn statement, Martinez explained that she could not rely on the police to protect her and her children because many officers maintain ties to gangs or are bribed by them. The IJ's CAT analysis made no mention of this evidence.

The IJ likewise took judicial notice of El Salvador's "most recent" country conditions report but then never discussed its contents nor explained how the report informed the CAT analysis.[13] We have repeatedly said that the agency errs when it fails to address

395 F.3d 123 (3d Cir. 2005)) (concluding IJ erred by finding alien's failure to meet the evidentiary burden for asylum precluded relief under CAT); *Amanfi v. Ashcroft*, 328 F.3d 719, 725 (3d Cir. 2003) ("A petition for protection under the [CAT] differs significantly from petitions for asylum or withholding of removal.").

[11] Maj. Op. 5 n.5.

[12] *Ghebrehiwot*, 467 F.3d at 358 ("We cannot adjudicate [the petitioner's] claim for CAT relief in the first instance because our role is limited to determining if there is substantial evidence to support the IJ's determinations."); *Alimbaev v. Att'y Gen.*, 872 F.3d 188, 196 (3d Cir. 2017) ("If further factfinding is needed, the [BIA] must remand the proceeding to an immigration judge.").

[13] AR 54, 124.

material evidence concerning acquiescence, including country conditions evidence.[14]

That omission is particularly significant where, as here, the applicant has alleged police inaction and ties between law enforcement and gang members. On this record, I cannot make heads or tails of how Salvadoran officials respond when gangs carry out threats like those Martinez received, whether gangs operate with impunity, or whether police protection exists outside of theory.

Martinez, of course, bears the burden of establishing that torture is more likely than not to occur and that it would occur with the consent or acquiescence of a public official.[15] But the corollary is equally important: when the agency concludes that burden has not been met, it must explain *why*, with factual findings and reasoning sufficient to permit appellate review.[16] Without a reasoned explanation, we have nothing to which we can defer.[17]

---

[14] *See Quinteros v. Att'y Gen.*, 945 F.3d 772, 786 (3d Cir. 2019); 8 C.F.R. § 1208.16(c)(3)(iv) (instructing the agency to consider "relevant information regarding conditions in the country of removal" in assessing the possibility of torture).

[15] *See Myrie*, 855 F.3d at 515–16. Her counsel's failure to submit any country conditions evidence is particularly concerning given Martinez's testimony about conditions in El Salvador and the public availability of such information.

[16] *Awolesi v. Ashcroft*, 341 F.3d 227, 229, 232–33 (3d Cir. 2003) (observing that "to give meaningful review of the BIA's decision, we must have some insight into its reasoning" and explaining that vague statements such as "the evidence is insufficient" are inadequate when denying relief); *Quinteros*, 945 F.3d at 786 (noting if evidence "is to be disregarded, we need to know why") (cleaned up).

[17] *See Quinteros*, 945 F.3d at 788 (remanding on CAT claim for agency's failure to determine whether public officials in El Salvador would acquiesce to torture); *Huang v. Att'y Gen.*, 620 F.3d 372, 388–89 (3d Cir. 2010) (vacating where the agency failed to consider material record evidence and provide sufficient analysis showing it had conducted a full review of the record); *Dia*, 353 F.3d at 242–43 (requiring the agency to provide reasoning sufficient to permit meaningful appellate review). *See also Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 108–09, 112 n.5 (3d Cir. 2020), *abrogated on other grounds by Urias-*

When the agency fails to articulate the factual basis for denying CAT relief, remand is required so that it may perform the necessary factfinding in the first instance and provide a reasoned basis for its decision. I would therefore grant the petition for review as to the CAT claim, vacate that portion of the agency's decision, and remand for further proceedings consistent with this opinion. For these reasons, I respectfully dissent in part.

---

*Orellana v. Bondi*, 607 U.S. __ (2026) (explaining "concrete and menacing" threats may constitute persecution and vacating CAT claim for agency to reconsider entire record and to "provide the explanation required for the decision it ultimately reaches").