**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 21-1518, 22-1362, & 23-1099
_____

ABEL MENDEZ,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of Orders from
the Department of Homeland Security and
the Executive Office for Immigration Review
(Agency Case No. A216-429-606)

Immigration Judge: Mirlande Tadal
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 7, 2024
_____

Before:  SHWARTZ, CHUNG, and AMBRO, <u>Circuit Judges</u>.

(Filed:  March 12, 2024)
_____

OPINION*
_____

SHWARTZ, <u>Circuit Judge</u>.

_____

        * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Petitioner Abel Mendez petitions for review of three Board of Immigration Appeals ("BIA") orders. For the following reasons, we will (1) dismiss his petition to review the order denying his request for cancellation of removal for lack of jurisdiction and (2) deny his petitions to review the orders denying his motions to reopen and for reconsideration.

I.

Mendez, a Honduran citizen, unlawfully entered the United States and married a United States citizen with whom he has three children, two of whom have autism. Between 2018 and 2019, Mendez was arrested for: (1) driving under the influence of alcohol, (2) aggravated assault, (3) weapons possession, (4) simple assault, and (5) sexual assault and endangering the welfare of a minor. After his release on the sexual assault charge, Mendez received a Notice to Appear ("NTA") before an Immigration Judge ("IJ") to address his removability as a noncitizen present in the United States without admission or parole.

At an initial hearing, the IJ granted Mendez a continuance to give him more time to find a lawyer. At a subsequent hearing, Mendez, proceeding pro se and using a Spanish translator, testified that he: (1) received the NTA; (2) illegally entered the United States in 2006; (3) resided with his family; and (4) preferred to return to Honduras if removed. The IJ sustained the charge of removability and provided Mendez with a form to apply for cancellation of removal under 8 U.S.C. § 1229b(b)(l).[1] The IJ identified

_____

[1] To obtain cancellation of removal, § 1229b(b)(1)(A) requires an applicant show, among other things, that he "has been physically present in the United States for a

2

documents Mendez could submit in support of his application, including "documents to establish [his] physical presence in the United States for 10 years[,]" tax and employment records, proof of good moral character, the disposition of his pending criminal charges, and evidence of hardship on his family were he removed.[2,3] AR 645.

Mendez submitted some of these documents and, at the merits hearing, he testified that he had not traveled outside of the United States since he first entered the country, continuously worked, paid taxes for two years, and that his family would suffer hardship if he were removed.

On cross-examination, Mendez acknowledged that he had been arrested on four separate occasions but had trouble answering some questions about them. For example, when questioned about his simple assault charge, Mendez was initially confused as to which arrest the Government was inquiring, but once the question was clarified, he explained that he was mistakenly accused of scratching someone's car. As to his then-pending sexual assault of a minor charge, Mendez vaguely described what had occurred.

The IJ then asked if Mendez wished to call his wife to testify over the telephone. Mendez responded: "You can call her and ask her." AR 684. The IJ explained that she could not question Mendez's wife because she could not present Mendez's case for him but could arrange to call her. Once his wife joined the hearing via telephone call,

---

continuous period of not less than 10 years immediately preceding the date of such application . . . ."

[2] The IJ directed Mendez to "sit down, listen to [her,]" and "focus" before giving these instructions. Administrative Record, No. 23-1099 ("AR") 645.

[3] Mendez received two extensions of this deadline, one lasting almost four months, to produce additional evidence, and the IJ also reminded him what to produce.

Mendez asked her to describe the problems that she and their children would experience if he returned to Honduras, and she explained how they would suffer "emotionally and economically." AR 687. The IJ then asked Mendez if he had other questions for his wife, but he did not. After cross-examination, the IJ asked whether his wife wished to discuss any other hardships. She answered that she lost her job and home and could only stay with her sister temporarily. Again, the IJ asked Mendez if he had any other questions for his wife, and he said he did not. At the close of the hearing, the IJ granted Mendez a continuance "because the Court want[ed] the record to be complete . . . and allow [Mendez] the opportunity to supplement the record with any document [he] [saw] fit." AR. 702-03.[4] Mendez submitted no other information.

The IJ denied his application and (1) held that Mendez failed to satisfy the ten-year continuous presence requirement, as he produced "little or no evidence" beyond his own testimony on this topic, AR 614-15; (2) declined to decide whether he had good moral character because of the then-pending sexual assault-related charges; and (3) found that Mendez's family would not suffer exceptional and extremely unusual hardship as a result of his removal.

Mendez appealed. The BIA dismissed the appeal because Mendez did not meaningfully challenge the IJ's finding that he failed to satisfy the continuous physical

---

[4] To explain his pending criminal charges, Mendez offered the IJ a copy of his public defender's business card, but the IJ explained that Mendez, not his criminal defense lawyer, was responsible for supplementing his application.

presence requirement.  Because Mendez's application warranted denial on this basis alone, the BIA declined to address the hardship question.[5]

Mendez, through counsel, then moved to reopen pursuant to 8 C.F.R. § 1003.2(a), arguing that the IJ violated his due process rights by failing to (1) conduct a competency hearing; and (2) sufficiently elicit testimony and develop the record.[6]  The BIA denied the motion[7] because Mendez did not establish that he merited a discretionary grant of cancellation of removal, as he failed to adequately address the pending criminal charges. The BIA did not address Mendez's due process arguments, which it described as having been "raised on appeal . . . and rejected . . . [in its] prior order."  AR 75.

Mendez then moved the BIA to reconsider, this time providing evidence that the sexual assault charge was resolved with a guilty plea to harassment and a thirty-day jail sentence.  The BIA denied the motion, explaining that although Mendez pleaded guilty to a lesser offense, "[g]iven [his] significant and recent criminal history and arrests," he

---

[5] The BIA also acknowledged Mendez's arguments about the IJ's purported bias and his difficulty understanding the interpreter, but it concluded that Mendez did not (1) identify how the IJ was biased or prevented him from presenting evidence, or (2) provide examples of how purported translation problems affected the proceedings.

[6] Mendez also alleged that his wife's and children's circumstances materially changed after the IJ's denial of his application for cancellation.  He argues on appeal that he provided sufficient evidence on economic hardship in his motion to reopen.

[7] The BIA may deny a motion to reopen when a movant fails to establish a prima facie case for the underlying relief he seeks or fails to furnish previously unavailable, material evidence.  See INS v. Abudu, 485 U.S. 94, 104-05 (1988).  The BIA may also "leap ahead . . . over the two threshold concerns (prima facie case and new evidence/reasonable explanation) and simply determine that even if they were met, the movant would not be entitled to the discretionary relief."  Id. at 105.

failed to show a likelihood that "a balancing of adverse and favorable factors would warrant a grant of cancellation of removal in the exercise of discretion." AR 4.

Mendez petitions for review.

## II[8]

### A

We lack jurisdiction to review orders denying cancellation of removal, 8 U.S.C. § 1252(a)(2)(B)(i); Hernandez-Morales v. Att'y Gen., 977 F.3d 247, 249 (3d Cir. 2020), along with the factual findings underlying such discretionary decisions, Patel v. Garland, 596 U.S. 328, 331 (2022).[9] We will therefore dismiss his petition to review the order denying his application for cancellation of removal based on his failure to satisfy the continuous presence requirement.[10]

### B[11]

We next examine Mendez's petitions for review of the orders denying his motions to reopen and for reconsideration. In support of his petitions, he argues that the IJ

---

[8] The BIA had jurisdiction to hear Mendez's appeal and motions under 8 C.F.R. § 1003.1(b)(3) and § 1003.2(a)-(b), respectively. We have jurisdiction to determine our jurisdiction. Calderon-Rosas v. Att'y Gen., 957 F.3d 378, 384 n.2 (3d Cir. 2020).

[9] To the extent Mendez argues that the BIA incorrectly weighed the evidence, such an argument presents a question of fact that we lack jurisdiction to review. Chiao Fang Ku v. Att'y Gen., 912 F.3d 133, 144 (3d Cir. 2019).

[10] Mendez asks that we stay this decision pending the Supreme Court's resolution of Wilkinson v. Att'y Gen., No. 21-3166, 2022 WL 4298337, at *1 (3d Cir. Sept. 19, 2022) (nonprecedential), cert. granted, 143 S. Ct. 2687 (2023) (mem.). Wilkinson, however, will not affect this case because the issue in that case is whether a court of appeals has jurisdiction to review hardship determinations, id. at *1, and here, the BIA's denial of Mendez's appeal rests on his failure to show continuous presence.

[11] We have jurisdiction over Mendez's other petitions for review under 8 U.S.C. § 1252(a)(1).

violated his due process rights. To establish a due process violation, a noncitizen must show "(1) that he was prevented from reasonably presenting his case[,] and (2) that substantial prejudice resulted." Serrano-Alberto v. Att'y Gen., 859 F.3d 208, 213 (3d Cir. 2017) (citation omitted). Mendez asserts that he was prevented from reasonably presenting his case because the IJ: (1) did not ensure he was competent to proceed; and (2) failed to develop the record. We examine each argument in turn.[12]

1[13]

As to Mendez's competency claim, IJs must protect the rights of mentally incompetent noncitizens. Matter of M-A-M-, 25 I. & N Dec. 474, 477-79 (BIA 2011). Noncitizens are presumed competent to participate in removal proceedings, id. at 477, and "[a]bsent indicia of mental incompetency," an IJ need not hold a competency hearing or impose procedural safeguards, id. (citation omitted); see also Hernandez Garmendia v. Att'y Gen., 28 F.4th 476, 486 (3d Cir. 2022) (citation omitted).

---

[12] The BIA mistakenly concluded in its decision on Mendez's motion to reopen that it had rejected his arguments concerning competency and the IJ's failure to develop the record in its review of his challenge to the final order of removal. We will not remand to the BIA because the error is harmless as these arguments lack merit and could not have affected the outcome of the case. See Li Hua Yuan v. Att'y Gen., 642 F.3d 420, 427-28 (3d Cir. 2011).

[13] We "review the BIA's denial of a motion to reopen for abuse of discretion, . . . review its underlying factual findings related to the motion for substantial evidence," Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006) (citations omitted), and review legal determinations de novo, Castro v. Att'y Gen., 671 F.3d 356, 365 (3d Cir. 2012). We may therefore reverse an order denying a motion to reopen only if the BIA's decision is "arbitrary, irrational, or contrary to law," id., or if the BIA has failed to "meaningfully consider[]" the evidence and arguments presented in support of the motion. See, e.g., Zhu v. Att'y Gen., 744 F.3d 268, 272 (3d Cir. 2014) (citation omitted).

Whether a noncitizen is mentally incompetent turns on whether he understands the "nature and object of the proceedings" and "has a reasonable opportunity to examine [witnesses] and present evidence and cross-examine witnesses." Hernandez Garmendia, 28 F.4th at 486 (internal quotation marks and citation omitted). Signs of incompetency may include "the inability to understand and respond to questions, the inability to stay on topic, or a high level of distraction." Matter of M-A-M-, 25 I. & N Dec. at 479. Isolated instances of these kinds of phenomena do not, however, automatically trigger an IJ's duty to inquire into mental competency. See Hernandez Garmendia, 28 F.4th at 480-81, 485-87 (concluding no indicia of incompetency present where petitioner gave inconsistent responses in his application for asylum, elected to proceed pro se, advised the immigration judge that he had experienced "an epilepsy attack," and had memory issues after a surgery, where the record showed he "engaged in responsive and appropriate colloquy with the judge . . . and presented evidence on his behalf").[14]

None of the events Mendez identifies constitute indicia of mental incompetence. First, although Mendez initially provided a confused response when the IJ asked him to confirm his signature on the NTA, once his attention was directed to the bottom of the

---

[14] Mejia v. Sessions, 868 F.3d 1118, 1122 (9th Cir. 2017), on which Mendez relies, is factually distinguishable, as there, the IJ heard evidence that the petitioner (1) suffered from mental illness and alcohol abuse, (2) experienced a head injury, (3) had not been taking medication prescribed for "major depression with psychotic features" at the time of the hearing, and (4) was "not functioning quite well" due to "an ongoing fight" in his mind." Id. at 1120 (internal quotation marks omitted). Based on those facts, the court concluded that the petitioner manifested indicia of incompetency. Id. 1121-22. Here, no such indicia of incompetency are present.

page, he identified his signature, showing that he understood the IJ's question. Mendez thereafter showed no difficulty responding to the IJ's questions.

Second, Mendez claims that while the IJ was explaining the cancellation of removal application process, she observed him "playing with his folder" and needed to instruct him to "listen" and "focus[.]" AR 645. This observation and instruction do not show that he was incompetent. Indeed, the IJ never again needed to remind him to pay attention.

Third, when the IJ instructed Mendez to supplement his application with documents relating to his criminal charges, Mendez attempted to give the IJ a copy of the his public defender's business card, explaining that his lawyer "told [him] clearly that [he] could give this card to you so that you could call him[.]" AR 702. That Mendez did not understand that the IJ would not telephone his criminal defense lawyer shows an unfamiliarity with legal processes, not incompetence.

Fourth, Mendez's claim of English illiteracy does not by itself raise indicia of incompetency. See, e.g., Lopez-Aguilar v. Garland, No. 17-72005, 2022 WL 457944, at *1 (9th Cir. Feb. 15, 2022) (rejecting petitioner's claim that "illiteracy was evidence of his incompetency" where a translator read him documents and he "gave coherent testimony").

Fifth, Mendez's confusion while discussing his arrests, which occurred within a two-year timeframe, does not indicate incompetence. For example, when questioned about his dismissed simple assault charge, Mendez initially did not answer, apparently because he did not know which of his arrests the Government was asking about. Once

9

the question was clarified, Mendez explained the circumstances of the crime. Confusion about closely timed events does not show incompetency. See, e.g., Salgado v. Att'y Gen., 889 F.3d 982, 988-89 (9th Cir. 2018) (stating that the inability to recall details or "other similar mental lapses" do not show incompetency).

Lastly, when the IJ asked Mendez if his wife would testify, Mendez replied that the IJ should "call her and ask her." AR 684. The IJ replied that Mendez, not the Court, bore the responsibility to examine witnesses. Mendez demonstrated his understanding of this duty when he asked his wife questions about the hardship the family would face if he were removed.

These events, in isolation or collectively, are not indicia of incompetency. To the contrary, the record shows that Mendez was aware of the nature and object of the proceedings, responsive to questions and instructions, and furnished relevant evidence. Accordingly, there was no reason for the BIA to reopen the proceedings based upon Mendez's purported incompetency.

2

As to Mendez's claim that the IJ failed to develop a record, our precedent has declined to impose an affirmative obligation on immigration judges to do so. Serrano-Alberto, 859 F.3d at 224 n.8. Thus, his due process claim on this basis also fails.[15]

---

[15] In any event, the record shows that the IJ gave Mendez the opportunity to present his application, including by: (1) adjourning the initial conference to allow him more time to secure counsel; (2) granting him an extension to submit his application after he missed the initial deadline; (3) twice explaining to him the documents he needed to submit; (4) dialing his wife's number for him so that she could testify remotely; (5) confirming twice that he had no further questions for his wife during her testimony; (6)

As to his petition for review of the denial of his motion for reconsideration, Mendez relies on the same arguments concerning incompetency and the IJ's alleged failure to sufficiently develop the record.[17]  For the above reasons, these grounds do not provide a basis for relief.

## III

For the foregoing reasons, we will dismiss Mendez's petition to review the order related to his final removal order and deny his petitions to review the orders denying his motion to reopen and for reconsideration.

---

eliciting additional testimony from his wife about the hardships that she would experience without her husband and to provide context on her husband's sexual assault charge; and (7) giving Mendez more time to produce additional evidence.

[16] We review the denial of a motion for reconsideration for abuse of discretion, and the BIA's decision will be disturbed only when it is "arbitrary, irrational, or contrary to law." Borges v. Gonzales, 402 F.3d 398, 404 (3d Cir. 2005) (internal quotation marks and citations omitted).

[17] Mendez did not meaningfully argue incompetency or a failure to develop the record in support of his motion for reconsideration before the BIA.  Instead, he focused on the fact his downgraded assault charge influenced the weighing of equities.  Notably, he does not make an equities argument to us in connection with his request that we review the reconsideration order.  Instead, he relies on only his due process arguments on appeal.  The Government does not challenge his reliance on those due process arguments, and so we have considered them in connection with his petition to review the reconsideration order.